**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JONATHAN CHRISTIAN BOLSON,

Plaintiff,

v. No. 2:26-cv-01745-SMD-JHR

SUBARU OF AMERICA, Inc., and
GPI TX-SU, INC., d/b/a EL PASO SUBARU,
d/b/a GROUP 1 SUBARU EL PASO,

Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER REQUIRING PRESERVATION OF PHYSICAL EVIDENCE**

Before the Court is Plaintiff's Motion for an Order Requiring Preservation of Physical Evidence (the "Motion"). [Doc. 18]. Defendant GPI TX-SU, Inc., d/b/a El Paso Subaru ("GPI"), which has the subject evidence in its facility, filed a response in opposition to the Motion, [Doc. 19 at 2], and Plaintiff filed a reply. [Doc. 20]. Defendant Subaru of America, Inc. ("SOA"), did not respond to the Motion. For the following reasons, the Court will deny Plaintiff's Motion.

## I. Background

Plaintiff filed this case in the state court on April 24, 2026. [Doc. 1]. Defendants GPI and SOA removed the case to this court on May 29, 2026. [*Id.*] Then, Plaintiff filed his First Amended Complaint on June 16, 2026, and Defendants filed their respective answers on June 30, 2026. [Docs. 14, 15, 16]. Plaintiff filed the Motion on July 2, 2026. [Doc. 18]. On September 14, 2026, the parties submitted a Joint Status Report in which they noted that they had met and conferred on September 3, 2026, and the Court held an initial scheduling conference on September 22, 2026. [Docs. 23, 28]. The Court then entered a Case Management Scheduling Order fixing deadlines for

discovery and setting parameters for interrogatories, depositions, requests for production, and requests for admission. [Doc. 29].

In his First Amended Complaint, Plaintiff alleges that

> On February 2, 2026, while Plaintiff was driving approximately 80 mph on Interstate 10, [his 2024 Subaru WRX's] manual transmission shifter bypassed the 6th gear detent and moved toward the reverse gear position, creating an immediate and serious safety hazard. Plaintiff's fiancée, a T12 paraplegic, was a passenger at the time. The failure is a mechanical failure of the OEM internal reverse lockout mechanism – a component located inside the sealed transmission case with zero mechanical interface with any external aftermarket component on the [WRX].

[Doc. 14 at 3-4]. He further alleges that he purchased the WRX new from GPI in 2024 for $42,679.23 through GECU Federal Credit Union ("GECU"), with 78 monthly payments of $918.61. [*Id*. at 3]. He states that he "has made every monthly payment without interruption despite the vehicle remaining inoperable and in Defendants' possession since February 9, 2026." [*Id*.] He alleges that he delivered the WRX to GPI on February 9, 2026, and GPI disassembled the transmission after SOA told Plaintiff it would pay the cost of disassembly. [*Id*. at 4]. Plaintiff alleges that, on March 20, 2026, SOA denied warranty coverage, "citing 'modifications and driver error,' offering a conditional 50% goodwill repair only if Plaintiff removed all modifications and reset the ECU to factory settings." [*Id*. at 5]. Plaintiff contends that SOA and GPI failed to communicate with him fully and timely, and that they used other tactics to prevent Plaintiff from pursuing his legal rights. [*Id*. at 6]. He alleges that SOA has violated its warranty by not completing the repairs within 30 days and that Defendants have a pattern of "denying warranty claims on the same modification-based, causation-free pretext it deployed against Plaintiff." [*Id*. at 7].

Based on these allegations, Plaintiff asserts two claims. First, in Count I, he alleges that Defendants have violated the New Mexico Unfair Practices Act. [*Id*. at 12 (citing N.M. Stat. Ann. § 57-12-2]. Second, in Count II, he alleges violations of the Magnuson-Moss Warranty Act. [*Id*. at 13 (citing 15 U.S.C. § 2310(d)]. He asserts he is entitled to compensatory damages of

approximately $46,000, including the outstanding loan balance, reimbursement for monthly payments already made, insurance premiums, filing fees and litigation expenses, and damage to his credit score. [*Id*. at 14]. He also seeks statutory damages and damages of $35,000 for his mental anguish, as well as reasonable attorney's fees. [*Id*. at 16].

In the Motion, Plaintiff seeks an order directing GPI to preserve the WRX and "all disassembled components . . . in their current condition pending final resolution of this action" and to provide Plaintiff with "a written inventory of all disassembled components currently in its possession, including their storage location." [Doc. 18 at 6]. He also asks the Court to direct that "any inspection of the vehicle or its components by Defendants' experts or agents be preceded by 14 days' written notice to Plaintiff, with Plaintiff or Plaintiff's designated representative entitled to be present during any such inspection." [*Id*.] He asks the Court to direct GPI to "provide written notice to GECU Federal Credit Union of" any order resulting from his Motion "so that any repossession proceedings account for the Court's directive[.]" [*Id*]. Finally, he asks the Court to prohibit "GPI from reassembling, repairing, transferring, auctioning, or otherwise disposing of the vehicle or any of its components without prior written notice to Plaintiff . . . and leave of Court." [*Id*.]

**II. Legal Standards**

"[T]he case law imposes a 'duty to preserve material evidence . . . not only during litigation but also . . . [during] that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 60 (2003) (alterations in original) (quoting *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 591 (4th Cir. 2001)); *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) ("[A] party has a duty to preserve evidence because it knew, or should have known, that litigation

was imminent"). A party may seek spoliation sanctions if the opposing party failed to preserve evidence, knowing litigation was imminent, and the movant "was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). Because of this duty, an order to preserve evidence is not a prerequisite for a spoliation motion. *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999) ("Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation.").

Separate from the duty to preserve imposed in case law, courts have the "inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004); *see* Fed. R. Civ. P. 16 (stating that, "[a]t any pretrial conference, the court may consider and take appropriate action on . . . controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37 . . . ."). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "That restraint requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome." *Pueblo of Laguna*, 60 Fed. Cl. at 138. To show that an order to preserve evidence is necessary, the movant "must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." *Id*. To show the order would not be burdensome, the movant must show that "the particular steps [requested] will be effective, but not overbroad—the court will neither lightly exercise its inherent power to protect evidence nor indulge in an exercise in futility. *Id*. *See Boyd v. Hi Country Chevrolet*, No. CIV 10-602 RB/KBM, 2011 WL

13289644, at *1 (D.N.M. Aug. 11, 2011). When the case law already obligates a party to preserve evidence, courts typically decline to exercise their inherent power to order preservation absent a sufficient showing. *See, e.g.*, *id*. (stating that an order was unnecessary where the defendants were aware of the materials the plaintiff wanted preserved and the plaintiff had not shown an order was necessary); *Minor JGE v. United States*, No. CV 14-710 MV/WPL, 2015 WL 11181340, at *1 (D.N.M. Jan. 7, 2015) (stating that the court was "not persuaded that a preservation order is appropriate or necessary in light of the parties' existing legal obligations to preserve relevant evidence"); *Romero v. United States*, No. CV 14-640 MV/WPL, 2015 WL 12832330, at *2 (D.N.M. Jan. 7, 2015) (same); *Valentine v. PNC Fin. Servs. Grp., Inc.*, 2018 WL 7238214, at *6 (D. Colo. Sept. 28, 2018) (stating that because "[t]he Federal Rules of Civil Procedure require parties to take steps to preserve relevant evidence, including . . . physical evidence . . . a specific order from the court directing one or both parties to preserve evidence is not ordinarily required"), *report and recommendation adopted,* No. 18-CV-01934-CMA-SKC, 2019 WL 117465 (D. Colo. Jan. 7, 2019).

Finally, a party may not use a motion to preserve evidence to jump start discovery without showing such an order is necessary under the circumstances. *Cf. Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 651 (D. Minn. 2002) (granting the plaintiff's motion for expedited discovery because pending motions were delaying the start of discovery under the Federal Rules of Civil Procedure). Courts will consider the procedural posture of a case when determining whether to grant a motion for a preservation order and the scope of any procedures requested. *See, e.g., Valentine*, 2018 WL 7238214, at *6 (noting that a preservation order was premature because discovery had not yet begun). The timing of discovery is governed by the Federal Rules of Civil Procedure and the District of New Mexico Local Rules, which provide that "[a] party may not seek

discovery under these rules or the Federal Rules of Civil Procedure before the parties have conferred as required by FED. R. CIV. P. 26(f) except by agreement of all parties or by Court order." D.N.M. LR-Civ. 26.4; *see also* Fed R. Civ. P. 26(d)(1). "In conferring, the parties must consider the nature and basis of their claims and defenses and . . . discuss any issues about preserving discoverable information . . . ." Fed. R. Civ. P. 26(f)(2).

**III. Analysis**

The Court will deny Plaintiff's Motion. GPI has had the WRX in its possession since February 9, 2026. [Docs. 18 at 3; 19 at 6]. It represents to the Court that it is "upholding its duty to preserve relevant evidence." [Doc. 19 at 2]. To show that a preservation order is necessary, Plaintiff must show that "there is significant risk that" the WRX and its component parts "will be lost or destroyed . . . ." *Pueblo of Laguna*, 60 Fed. Cl. at 138. Plaintiff has not made that showing.

Plaintiff posits two reasons a preservation order is necessary. He argues first that there is a risk of loss or destruction because GPI "accessed" and "repositioned" the WRX on April 2, 2026, the day that he "served a formal legal demand on GPI and SOA." [Doc. 18 at 3]. He bases this argument on Starlink telematics records, which he asserts show "an ignition activation event" which would have "permitt[ed] the [WRX] to be pushed or towed." [*Id.*] He asserts that this data contradicts GPI's representation that it has not moved the WRX while it has been at GPI's facility. [*Id.*]

GPI argues that, even if there was an "ignition activation event," that fact does not show that alteration or loss of the WRX is imminent. [Doc. 19 at 4-5]. The Court agrees. The mere fact that GPI activated the ignition does not show a significant risk the WRX and parts will be lost or altered. And Plaintiff does not dispute that the WRX and its parts are still at GPI's facility. [Doc. 18 at 2].

Plaintiff next argues that there is a significant risk of loss of the WRX and its parts because, "[w]ith payments having ceased, GECU has the contractual right to seek repossession" of the WRX. [Doc. 18 at 3]. "Upon repossession, the [WRX] would likely be transported, reassembled (destroying the current configuration of the disassembled components), and auctioned – permanently eliminating the physical evidence of the transmission failure and its internal condition at the time of the warranty denial." [*Id.*] Although potential repossession by GECU poses some risk that the WRX will not be preserved indefinitely, it does not show that a preservation order is necessary at this time. Plaintiff himself can avoid repossession of the WRX by making payments to GECU. *Cf. Graff v. Baja Marine Corp.*, No. CIV.A. 2:06-CV-68WCO, 2007 WL 6900792, at *3 (N.D. Ga. Dec. 20, 2007) (holding that potential repossession of a boat did not justify the owner's removal of a disputed boat component because the owner "was the only party in a position to preserve the" evidence), *aff'd,* 310 F. App'x 298 (11th Cir. 2009); *Brancaccio v. Mitsubishi Motors Co.*, No. 90 CIV. 7852 (RWS), 1992 WL 189937, at *2 (S.D.N.Y. July 27, 1992) (plaintiff was at fault for allowing a vehicle to be repossessed before the defendants could examine it). Although Plaintiff asserts in the Motion that GPI's possession of the WRX is preventing him from making payments, he does not explain how. [Doc. 18 at 2]. Moreover, in the Amended Complaint, Plaintiff asserts only that he needs the WRX for personal transportation to medical appointments and to care for his fiancé, not that the WRX is essential to earn money for the payments. [Doc. 14 at 16].

Moreover, Plaintiff has not shown that repossession is imminent. In his reply filed in July 2026, he states he has not made payments since April 2026. [Doc. 20 at 3]. But in the Amended Complaint filed in June 2026, Plaintiff asserted he was current on payments. [Doc. 14 at 3 ("Plaintiff has made every monthly payment without interruption despite the [WRX] remaining

inoperable and in Defendants' possession since February 9, 2026.")]. In either case, the timing of any action by GECU is relevant to whether there is a significant risk of loss before relevant discovery is complete. Because the parties conferred on September 3, 2026, and the Court entered a Case Management Scheduling Order on September 22, 2026, the parties may now conduct discovery. Through discovery, Plaintiff may request an inventory of the disassembled parts held by GPI, to inspect the disassembled parts and the rest of the WRX, and to be present if GPI's experts or agents inspect those items. Indeed, in the parties' Joint Status Report, Plaintiff states that he intends to make such requests in discovery. *See, e.g.*, [Doc. 23 at 13, 15]. The parties may address any disputes over those requests through motion practice under Federal Rules of Civil Procedure 26 and 37. In short, because discovery has begun, Plaintiff may have an opportunity to collect the information he seeks before GECU acts to repossess the WRX. Finally, if GECU begins repossession proceedings notwithstanding Defendants' preservation duties before Plaintiff has the information he requests in discovery, he may seek a protective order at that time if necessary.

The Court will deny Plaintiff's Motion because Plaintiff has not shown that there is a significant risk the WRX or its parts will be lost or destroyed before the completion of discovery. Given this ruling, the Court will deny Plaintiff's request for an order directing Defendants to notify GECU of their preservation obligations. Plaintiff is free to notify GECU of the pending lawsuit regarding the WRX at any time.

Although the Court will deny Plaintiff's Motion, the Court reminds Defendants that their duty is to preserve the WRX and components in the same state they were in at the time Plaintiff filed the lawsuit. The parties agree that GPI disassembled the WRX's transmission before Plaintiff filed his original complaint on April 24, 2026. [Docs. 18 at 6; 19 at 5; 23 at 8, 11, 13]. Hence, Defendants' preservation duty precludes reassembly or repair of the WRX's transmission without

reasonable notice to and approval by Plaintiff. *See* [Doc. 19 at 5 (stating that GPI does not oppose "non-destructive preservation of the [WRX] and currently disassembled components")].

**IT IS SO ORDERED.**

HON. JERRY H. RITTER
United States Magistrate Judge